## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re*<br><br>PATRIOT NATIONAL, INC., *et al.,*[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 18-10189 (KG)<br><br>(Jointly Administered) |
| PATRIOT NATIONAL, INC;<br>PATRIOT CARE MANAGEMENT, LLC;<br>PATRIOT RISK SERVICES, INC.; and<br>PATRIOT UNDERWRITERS, INC.;<br><br>　　　　Debtors<br><br>v.<br><br>CAREWORKS MANAGED CARE SERVICES,<br>INC., f/k/a MCMC, LLC and YORK RISK<br>SERVICES GROUP<br><br>　　　　Defendants. | <br><br><br><br><br>Adv. Pro. No. 18-_____ |

## COMPLAINT FOR INJUNCTIVE RELIEF

Debtors Patriot National, Inc., Patriot Care Management, LLC, Patriot Risk Services,

Inc., and Patriot Underwriters, Inc., (and, together with their affiliated debtors and debtors in

possession in the above-captioned chapter 11 cases, the "Debtors"), respectfully allege for their

complaint and claim as relief as follows:

---

[1]　The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

## **NATURE OF THE ACTION**

1.      The Debtors commenced this  adversary proceeding pursuant to sections 105(a), 362, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 7001(7) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 65 of the Federal Rules of Civil Procedure made applicable hereto by Bankruptcy Rule 7065 seeking:

(i)      injunctive relief pursuant sections 105(a), 362, and 365 of the Bankruptcy Code, to compel Defendants CareWorks Managed Care Services, Inc. f/k/a MCMC, LLC ("CareWorks") and York Risk Services Group ("York") (collectively, the "Defendants") to perform under its executory contract with the Debtors because the Defendants stopped performing on or about February 22, 2018, under the Managed Care Services Agreement, dated August 6, 2014 (and any amendments, supplements, and related documents and exhibits thereto, the "Contract")),[2] without cause or justification thereby jeopardizing the Debtors' reputation and relationships with their customers;

(ii)      monetary damages for violations of sections 362 and 365 of the Bankruptcy Code; and

(iii)      reasonable costs and expenses incurred in this action, including Debtors' attorney's fees.

2.      Debtors provide managed care services to third party insurance companies (the "Debtors' Customers"), and essentially sub-contract certain of those services to the Defendants, including, but not limited to, some or all of the following: (a) case management and medical bill

---

[2] A copy of the Contract is attached to this Complaint as **Exhibit A**.  Patriot Risk Services and Patriot Insurance Management Company and MCMC LLC are also parties to the MCMC Services Agreement, dated April 2, 2007, a copy of which is included as part of **Exhibit A**.

- 2 -

review services; (b) mailroom and indexing services for paper bills that are imaged and made available to Debtors' through Defendants' client portal and for exporting to Debtors' claims system; (c) accepting electronic bills on behalf of Debtors through Defendants' clearinghouse in states that require the Debtors to accept electronic bills from providers; (d) evaluation of medical bills and making recommendations utilizing applicable state mandated pricing guidelines, usual and customary rates and medical rules; (e) making available its pre-PPO payment recommendations to Debtors'' claims representatives for bill approval/denial decisions; (f) providing Debtors with nurse audit and/or review services and out-of-network negotiated savings services; (g) providing jurisdictional state reporting services as required by individual jurisdictional requirements, and (h) directly manage any conflicts or complaints from medical providers concerning bill audits completed by Defendant (collectively, the "Services").  *See* Contract at 12 (Exhibit A – Exclusive Services).

3.    Debtors are being irreparably harmed by Defendants' unilateral and unjustified suspension or termination of the Services because, among other things, the Debtors (a) are unable to fulfill all of their obligations to their Customers, thereby exposing the Debtors to the risk of  contractual damages and, more importantly, the irrevocable loss of business, (b) will face reputational injury if they are unable to fulfill their obligations to their Customers; and (c) may be found to be out of compliance with applicable state guidelines, which could result in fines and penalties.  *See* Contract at 1, 11.

4.    Defendants' failure to perform under the Contract postpetition violates sections 362 and 365 of the Bankruptcy Code.  For the foregoing reasons, and those set forth below, the Debtors respectfully request that the Court direct Defendants to comply with the Contract, and award the Debtors damages in an amount to be determined at trial.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

dated February 29, 2012.  This adversary proceeding is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 7008-1 of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection

with this Motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      This adversary proceeding is initiated under Bankruptcy Rule 7001(7), and

the relief requested herein may be ordered pursuant to sections 105(a), 362 and 365 of the

Bankruptcy Code.

## THE PARTIES

8.      Plaintiff Debtor Patriot National, Inc. is the parent of Plaintiff Debtor Patriot Care

Management, LLC and each of the other Debtors.

9.      Defendant CareWorks is a Delaware company having its principal place of

business at 405 Duke Drive, Suite 270, Franklin, Tennessee 37067.

10.     Defendant York Risk Services Group has a principal place of business at One

Upper Pond Road, Building F, 4th Floor, Parsippany, New Jersey 07054.

11.     Defendants have entered a notice of appearance in the Chapter 11 Cases (defined

below) through counsel at Bast Amron LLP and Cross & Simon, LLC.  *See* Docket Nos. 103 and

120.  Defendant CareWorks Managed Care Services f/k/a MCMC LLC is also a member of the Official Committee of Unsecured Creditors (the "Committee"). *See* Docket No. 118 (appointing MCMC, LLC as committee member).

## FACTUAL BACKGROUND

### The Chapter 11 Filings

12.    On January 30, 2018 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  No trustee or examiner has been appointed in the Chapter 11 Cases. The Debtors are operating their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

13.    By an order entered on February 1, 2018, the Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered.  The Office of the United States Trustee appointed the Committee in the Chapter 11 Cases on February 16, 2018.

14.    The events leading up to the Petition Date and the facts and circumstances regarding the Chapter 11 Cases are set forth in the *Declaration of James S. Feltman, Chief Restructuring Officer of Patriot National, Inc., in Support of First Day Relief*, filed on January 30, 2018 (the "First Day Declaration") [Docket No. 4], and incorporated herein by reference.

### The CareWorks Contract and Failure to Perform Postpetition

15.    The relationship between the Debtors and Defendants is governed by the Contract. A copy of the Contract is attached to this Complaint as **Exhibit A**.  The Contract is executory as both the Debtors and Defendant have continuing obligations.  *See* Contract at 12 (Defendants' Obligations) and Contract at 14 ("CLIENT's [Patriot Risk Services, Inc. and Patriot Underwriters, Inc.] Obligations").

16.    As set forth above, Defendants provide the Services to the Debtors under the Contract, including, but not limited to: (a) case management and medical bill review services; (b) mailroom and indexing services for paper bills that are imaged and made available to Debtors' through Defendants' client portal and for exporting to Debtors' claims system; (c) accepting electronic bills on behalf of Debtors through Defendants' clearinghouse in states that require the Debtors to accept electronic bills from providers; (d) evaluation of medical bills and making recommendations utilizing applicable state mandated pricing guidelines, usual and customary rates and medical rules; (e) making available its pre-PPO payment recommendations to Debtors'' claims representatives for bill approval/denial decisions; (f) providing Debtors with nurse audit and/or review services and out-of-network negotiated savings services; (g) providing jurisdictional state reporting services as required by individual jurisdictional requirements, and (h) directly manage any conflicts or complaints from medical providers concerning bill audits completed by Defendant.  *See* Contract at 12 (Exhibit A – Exclusive Services).

17.    On February 14, 2018, Defendants threatened to terminate the Services if the Debtors failed to immediately make certain payments.  Specifically, on that day, B.J. Dougherty, a Senior Vice President of CareWorks sent an e-mail to Ms. Ashlie Ott, Executive Vice President and Chief Operating Officer of Patriot Care Management, LLC, asking for an update on having certain invoices paid and indicating that he is "on a call with counsel now and they are recommending that we cease providing services.  Every conversation that we have had has indicated that your intention was to pay the invoices, but I need something to provide to upper management for the board meeting they are having this Friday.  Please provide me anything that you can ASAP so that I can continue providing services."  *See* **Exhibit B**.

- 6 -

18.     The Defendants made good on Mr. Dougherty's threat.  On or about February 22,

2018, the Debtors learned that Defendants stopped performing under the Contract, and had

ceased processing bills and submitting daily fees to the Debtors.

19.     On February 23, 2018, the Debtors made the following payments against the

postpetition invoices attached as **Exhibit C**:

      a.   Invoice #0118PatriotRiskSvc -- $1,482 – Paid 2/23/2018 (for services

            rendered January 2018)

      b.   Invoice #702700118d -- $13,958.14 – Paid 2/23/2018 (for the period of

            1/29/18 – 02/04/18)

      c.   Invoice #702700218 -- $6,648.19 – Paid 2/23/2018 (for the period of 02/05/18

            – 02/11/18)

      d.   Invoice #702700218a -- $7,461.88 – 2/23/2018 (for the period of 02/12/18 –

            02/18/18).

20.     Notwithstanding the Debtors' tendering of accelerated payments, the Defendants

continue to refuse to provide the Services despite the Debtors' repeated demands.

**Debtors' Need for Injunctive Relief**

21.     The Defendants' failure to perform under the Contract is irreparably harming the

Debtors' business because the Debtors cannot provide a core function of their operations –

providing comprehensive services to its insurance carrier clients, primarily in the workers'

compensation sector.  As set forth in the First Day Declaration, the Debtors' business is

comprised of three primary components – underwriting, claims processing, and its proprietary

technology platform.  The Debtors' customers and revenue sources are mainly insurers, who

engage the Debtors to underwrite and service workers' compensation policies that those clients

issue.

- 7 -

22.    Defendants' willful failure to perform under the Contract will result in the Debtors being unable to meet their own obligations under third party administrator agreements with various insurance carrier clients (*e.g.*, Guarantee Insurance Company, Zurich American Insurance Company, Zurich American Insurance Company of Illinois, American Guarantee & Liability Insurance Company, American Zurich Insurance Company, Stonewood National Insurance Company, and Scottsdale Insurance Company). *See* Contract at 1, 11.

23.    The Debtors cannot immediately secure alternative services from another provider without serious disruption and significant harm to their business.[3]  Indeed, switching to another provider will take time and will put at risk the Debtors' ability to meet applicable state guidelines regarding the processing and payment to insurance providers.  If the Debtors pay the wrong amounts or outside the timing of the applicable state guidelines, the Debtors could be subject to fines and penalties.  This irreparable harm will erode the value of the Debtors' estates and jeopardize the Debtors' ability to reorganize their business.

24.    The Contract itself also provides for the available remedy of injunctive relief. In particular, section 12(b) of the Contract provides for "Equitable Relief" and that:

> Each party agrees that the other party's violation of the provisions or covenants of Exhibit C of this Agreement may cause immediate and irreparable harm to the other party for which money damages may not constitute an adequate remedy at law. Therefore, the parties agree that, in the event either party breaches or threatens to breach said provisions or covenants, the other party may be entitled to seek injunctive and/or other preliminary or equitable relief, in addition to any other remedies available at law.

Contract at p. 27

25.    Accordingly, Debtors seek injunctive relief through this Complaint.

---

[3] Notably, the Defendants also breached their obligation to provide 30 days' notice prior to termination. *See* Contract at 1.  The 30-day provision was included to provide the Debtors with sufficient time to identify an alternative service provider in the event of Defendants' termination of the Contract.

## COUNT I

## VIOLATION OF SECTION 362(a) OF THE BANKRUPTCY CODE

26.     The Debtors repeat and reallege the allegations contained in the preceding
paragraphs of this Complaint as if fully set forth herein.

27.     Section 362(a) of the Bankruptcy Code operates as a stay, "applicable to all
entities," of, *inter alia*, (i) "the commencement or continuation . . . of a judicial, administrative,
or other action or proceeding against the debtor that was or could have been commenced before
the commencement of the case under this title, or to recover a claim against the debtor that arose
before the commencement of the case under this title;" and (ii) "any act to obtain possession of
property of the estate or of property from the estate or to exercise control over property of the
estate."

28.     Defendants' failure to perform their obligations under the Contract violate the
automatic stay, and the ability of the Debtors to continue their operations in the ordinary course
will be significantly hindered absent performance by Defendants.

29.     Defendants' continuing and flagrant violation of the automatic stay at this most
critical time will likely result in Debtors being unable to meet their own obligations  under third
party administrator agreements with various insurance carrier clients (e.g., Guarantee Insurance
Company, Zurich American Insurance Company, Zurich American Insurance Company of
Illinois, American Guarantee & Liability Insurance Company, American Zurich Insurance
Company, Stonewood National Insurance Company, and Scottsdale Insurance Company).  *See*
Contract at pp.1, 11.

30.     The Debtors are entitled to injunctive relief and monetary damages due to
Defendants' violation of the automatic stay under section 362 of the Bankruptcy Code, which

ongoing violations include refusing to perform postpetition under the Contract and failing to take steps to remedy nonperformance.

## COUNT II

## VIOLATION OF SECTION 365 OF THE BANKRUPTCY CODE

31.     The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

32.     Section 365 of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C. § 365(a).

33.     The Contract is an "executory contract" pursuant to section 365 of the Bankruptcy Code because material performance remains due by both Debtors and Defendants. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir.1989) (noting the Third Circuit's adoption of the Countryman standard: "An executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.")).

34.     As an executory contract, the Contract is subject to assumption or rejection by the debtor under section 365 of the Bankruptcy Code. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 529 (1984) ("In a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract"); *Interface Group-Nevada v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*,145 F.3d 124, 136 (3d Cir. 1998) (same).

35.     Pending the debtor's decision, the non-debtor counterparty to an executory contract must continue to perform its contractual obligations. *See Broadstripe, LLC, et al. v.*

*National Cable Television Cooperative, Inc. (In re. Broadstripe, LLC, et al.)*, 402 B.R. 646, 658 (Bankr. D. Del. 2009).

36.      Despite clear law to the contrary, Defendants, while initially performing postpetition, has now refused to perform under the Contract postpetition.

37.      The Debtors are entitled to a monetary damages and injunctive relief due to Defendants' violation of section 365 of the Bankruptcy Code by refusing to perform postpetition under the Contract.

**COUNT III**

**INJUNCTIVE RELIEF UNDER SECTION 105(a) OF THE BANKRUPTCY CODE**

38.      The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

39.      Section 105(a) of the Bankruptcy Code authorizes the court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

40.      The relief requested herein is necessary to protect the Debtors' ability to efficiently and effectively administer these Chapter 11 Cases and to preserve the property of their estates.

41.      In the absence of entry of the requested injunctive relief, the Debtors and their estates will be imminently and irreparably harmed.

42.      The balance of harm tips in favor of the Debtors.  Absent such relief, the Debtors will be greatly harmed.  In contrast, the Defendants' faced no identifiable harm because payment for their postpetition services will be entitled to administrative priority.

43.      The public interest weighs in favor of the issuance of a temporary restraining order and injunction.   The injunctive relief requested herein will serve the public interest by promoting compliance with the congressional purpose of the automatic stay under 362,

DOCS_DE:218188.4 69353/002

continued performance by nondebtor contract counterparties under section 365, and furthering the Debtors' ability to administer these Chapter 11 Cases and preserve their assets.

44.     For the reasons stated herein, the Debtors are entitled to a temporary restraining order and preliminary and permanent injunction staying, restraining and enjoining the Defendants from unlawfully refusing the continue postpetition performance under the Contract with the Debtors.

**COUNT IV**

**ATTORNEYS' FEES AND EXPENSES**

45.     The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

46.     The Debtors have been forced to incur attorneys' fees and expenses resulting from Defendants' refusal to perform under the Contract.

47.     Debtors should be awarded attorneys' fees, costs and litigation expenses associated with this action.

**PRAYER FOR RELIEF**

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request relief as follows:

1.     A temporary restraining order and preliminary and permanent injunction affirmatively requiring Defendants to continue postpetition performance under the Contract;

2.     Awarding Debtors monetary damages for ongoing violations of the automatic stay pursuant to section 362(a) of the Bankruptcy Code;

3.     Awarding Debtors monetary damages for violations of section 365 of the Bankruptcy Code;

4.      Awarding Debtors their reasonable costs and expenses incurred in this action,

including their attorney's fees; and

5.      An order granting such other and further relief as the Court may deem just

and proper.

Dated:  February 28, 2018          PACHULSKI STANG ZIEHL & JONES LLP
        Wilmington, Delaware

                                   */s/ Laura Davis Jones*
                                   Laura Davis Jones (DE Bar No. 2436)
                                   James E. O'Neill (DE Bar No. 4042)
                                   Peter J. Keane (DE Bar No. 5503)
                                   919 North Market Street, 17th Floor
                                   P.O. Box 8705
                                   Wilmington, Delaware 19899-8705 (Courier 19801)
                                   Telephone:  (302) 652-4100
                                   Facsimile:   (302) 652-4400
                                   Email:  ljones@pszjlaw.com
                                           joneill@pszjlaw.com
                                           pkeane@pszjlaw.com

                                        -and-

                                   Kathryn A. Coleman
                                   Christopher Gartman
                                   HUGHES HUBBARD & REED LLP
                                   One Battery Park Plaza
                                   New York, NY 10004-1482
                                   Telephone: (212) 837-6000
                                   Facsimile:  (212) 422-4726
                                   Email:  katie.coleman@hugheshubbard.com
                                           chris.gartman@hugheshubbard.com

                                   *Counsel for the Debtors*

DOCS_DE:218188.4 69353/002